### 21222.   PEPPERS v. THE STATE.

QUILLIAN, Justice. 1. The evidence submitted to the jury in the trial of the case proved every element of the crime of murder and supported the verdict finding the defendant guilty

of that offense. *Cochran v. State*, 213 Ga. 706 (100 SE2d 919).

2. The evidence did not authorize a charge of the court on the subject of voluntary manslaughter, and hence the trial judge did not err in not instructing the jury in reference to that grade of homicide. *Chappell v. State*, 209 Ga. 701 (75 SE2d 417).

3. The record discloses no error of law that requires the grant of a new trial.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 9, 1961—DECIDED JUNE 8, 1961.

*Atkins & Atkins, Ben S. Atkins, Dorothy D. Atkins,* for plaintiff in error.

*Paul Webb,* Solicitor-General, *Eugene L. Tiller, Frank S. French, Eugene Cook,* Attorney-General, *Rubye G. Jackson,* Assistant Attorney-General, contra.

Herman Edward Peppers, on his plea of not guilty to an indictment charging him with the murder of Geraldine Elliott by cutting, stabbing, and wounding her with a knife, was found guilty by the jury and sentenced to death by electrocution. His motion for a new trial, on general grounds and on the special ground that the trial court erred in failing to charge on voluntary manslaughter, was denied, and the bill of exceptions assigns error on this order.

Detective D. C. Nasworthy, a police officer of the Atlanta Police Department, testified that, around 4 p.m. on October 19, 1960, he received a call to 694 Washington Street. On arrival at that address, he was directed to apartment 3, where he kicked the door open, entered, and found Geraldine Elliott lying on the floor bleeding from her nose and chest and wiggling and gasping for breath. She stopped breathing shortly after his arrival. The defendant was bending over her. On being asked what had happened, Peppers said he had stabbed her; and when the officer asked where the knife was, the defendant picked it up from the floor where it was lying closed, and handed it to him. The knife had blood on it. The police officer testified that he bent down over the victim, and when he looked up, the accused was gone.

J. D. Bryant of the Atlanta Police Department testified that, at about 11:20 a.m. on October 20, 1960, he arrested the defendant hiding in the basement of 948 Washington Street, about two blocks from the stabbing scene.

Atlanta police officer Joseph C. Smith testified that, at about 4:20 p.m. on October 20, 1960, the defendant made a statement to him substantially as follows. Peppers had been living with Geraldine Elliott since summer in several apartments in Atlanta. The defendant was convicted of forgery, and was sent to Colony Prison Camp near Milledgeville. He received a letter from Geraldine saying that she had quit smoking and drinking. He wanted to see her, so he escaped from the prison and came to his sister's home in Atlanta. He saw Geraldine several times during the next day or two.

Geraldine Elliott told Peppers, according to Peppers' statement, that she was pregnant by him, but he told her that it couldn't have been him because he had been gone too long. Peppers had heard a rumor that Geraldine and Larry Johnson had been living together, and he knew at that time that she had been lying to him. On October 18 she wouldn't talk to him and walked off and left him.

On October 19 the defendant waited for Geraldine at her sister's apartment. He had a knife that she had given him several days previously. She came into the front room and started combing her hair. Peppers entered the room and stabbed her with the knife. He thought he stabbed her three times. She fell to the floor and looked up at him and said, "Help me, Edward." The defendant stated that he just looked at her and then he thought she died. When the officer came in, Peppers handed him the knife and ran out the back door, went across the street, and hid under houses until late at night, then walked the streets until the next morning. He said that he was not sorry that he killed her, that it had to be done, and that he would do it again. He was only sorry that he was caught.

There were ten stab wounds in the victim's body. The State introduced into evidence the knife, eight and seven-eighths inches long, with which the victim was stabbed. A regularly completed death certificate established the immediate cause of death as multiple stab wounds of the chest and neck.